# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DARREN S. BELTON,                    )
                                     )
                 Plaintiff,          )
                                     )
            v.                       )        1:23CV169
                                     )
RONNIE FIELDS, et al.,               )
                                     )
                 Defendants.         )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Motion for Leave to File Document (Docket Entry 56 ("Motion for Leave")) and the Motion of Defendants Mr. Danley, Ms. Workman, and Ms. Hoover for an Extension of Time (Docket Entry 58 ("Extension Motion")). For the reasons that follow, the Court will grant these Motions.

## INTRODUCTION

Plaintiff commenced this case by filing a pro se Complaint against various local government officials alleging that they violated his federal constitutional rights during his time in their custody as a pretrial detainee. (See Docket Entries 1, 3; see also Docket Entry 2 (Declaration and Request to Proceed In Forma Pauperis).)[1] Upon initial screening, the Court (per Chief United States District Judge Catherine C. Eagles) ruled "that [

_____

1 The Clerk's Office separately docketed the standard form pages of the Complaint (Docket Entry 3) and its additional pages containing information that would not fit on the form pages (Docket Entry 1). Pin cites to both portions of the Complaint will refer to the page numbers that appear in the footers appended to those materials upon their docketing in the CM/ECF system.

P]laintiff's claims against [D]efendants Danley, Workman and Hoover based on allegations of excessive force, cruel and unusual punishment, and violations of his right to privacy may proceed but all other claims [we]re dismissed." (Docket Entry 7 at 1 (all-caps and bold font omitted).) Defendants Danley, Workman, and Hoover (hereinafter, collectively, "Defendants") answered (<u>see</u> Docket Entries 19, 21) and the case advanced to discovery (<u>see</u> Text Order dated Sept. 6, 2023), following which Defendants filed their Motion for Summary Judgment (Docket Entry 37).

After obtaining an extension of time (<u>see</u> Text Order dated May 21, 2024), Plaintiff responded in opposition to the Motion for Summary Judgment (<u>see</u> Docket Entry 46 ("Pro Se Response")).[2] The Pro Se Response states, inter alia, that "Plaintiff [wa]s currently in segregation [with] some [of his] legal documents in storage" (<u>id.</u> at 5),[3] leaving him "[u]nable to file his interrogatories and admissions" (<u>id.</u>). In addition, before Plaintiff filed the Pro Se Response, he moved for an order from this Court requiring North Carolina's "Department of Adult Corrections to allow [him] to make copies of various documents." (Docket Entry 44 at 1; <u>see also</u> <u>id.</u> (adverting to "difficulty in litigating from a prison cell").)

---

2 Pin cites to the Pro Se Response will refer to the page numbers that appear in the footer appended to the Pro Se Response upon its docketing in the CM/ECF system.

3 Quotations from Plaintiff's handwritten materials employ standard capitalization conventions.

The Court (per the undersigned Magistrate Judge) granted that motion in part by ordering "the Clerk [to] attempt to locate counsel willing to represent Plaintiff pursuant to the Court's Pro Bono Representation Program, for the purpose of filing a supplemental response to [the] Motion for Summary Judgment and representing Plaintiff at trial, if any claim survives summary judgment." (Text Order dated July 31, 2024.) The Clerk struggled to find counsel willing to represent Plaintiff (see Docket Notice dated Oct. 23, 2024 ("The Clerk's Office has contacted 11 attorneys on its pro bono representation list, and[,] to date, no attorney has accepted representation. Efforts to secure pro bono counsel are ongoing.")), but – on December 20, 2024 – William Trivette "enter[ed an] appearance on behalf of [] Plaintiff" (Docket Entry 52 at 1). The Court (per the undersigned Magistrate Judge) thereafter "direct[ed ] Plaintiff (through newly appearing counsel) to file any supplemental response . . . to [the] Motion for Summary Judgment by 01/28/2025 . . . ." (Text Order dated Jan. 7, 2025; see also id. (authorizing Defendants to file supplemental reply ten days after supplemental response deadline).)

On January 23, 2025, Mr. Trivette "move[d the Court] to extend for 45 days the time in which to file a [supplemental] response to the [ M]otion for [S]ummary [J]udgment . . . ." (Docket Entry 53 at 1.) According to that motion, after entering his appearance, Mr. Trivette "immediately sent a letter to Plaintiff at Scotland

Correctional [Institution ("SCI")] to notify Plaintiff of the representation. [Mr. Trivette] mailed a second letter to Plaintiff on January 16, 2025, asking Plaintiff to respond. As of [that motion's filing, Mr. Trivette] ha[d] not received a reply from Plaintiff." (Id. at 3.) Said motion adds that "Plaintiff [wa]s incarcerated in Close Custody" (id.) and that "[i]t [wa]s possible that he ha[d] not received [Mr. Trivette's] letters or [] ha[d] difficulty responding" (id.). Finally, Mr. Trivette emphasized his desire to "obtain an affidavit from [] Plaintiff." (Id. at 4.)

The Court (per the undersigned Magistrate Judge) granted that motion and "extend[ed] the deadline for Plaintiff (through newly appearing pro bono counsel) to file a supplemental response to [the] Motion for Summary Judgment to 03/14/2025 . . . ." (Text Order dated Jan. 27, 2025.) On March 13, 2025, Mr. Trivette "move[d] for a second extension of 14 days (until March 28, 2025) in which to file a [supplemental] response to the [ M]otion for [S]ummary [J]udgment." (Docket Entry 54 at 1.) In that motion, Mr. Trivette explained that, "[d]espite [his] diligent efforts, [he] ha[d] not yet received Plaintiff's affidavit, which [Mr. Trivette] deem[ed] important to support a [supplemental] response to [the M]otion for [S]ummary [J]udgment." (Id.) Mr. Trivette further described these events that transpired since the Court extended the deadline for Plaintiff's supplemental response:

> [I] mailed . . . a third letter [to Plaintiff] on January
> 23, notifying [him] of [my] representation and asking him

4

> to respond. Plaintiff did respond by letter postmarked
> January 30, 2025, in which he gladly accepted [my]
> representation. [I] made legal calls to Plaintiff on
> February 5, 14 and 26. In the second and third calls[,
> I] urged Plaintiff to mail [me] his affidavit which would
> be attached to [the supplemental] response in opposition
> to summary judgment. [I] ha[ve] not received Plaintiff's
> affidavit as of the filing of this motion and ha[ve]
> arranged to call Plaintiff tomorrow (March 14) to inquire
> about the affidavit.

(Id. at 3; see also id. ("Plaintiff is incarcerated in close custody in [SCI]. It is possible that he is in a lock-down or otherwise cannot respond. [SCI] is 123 miles one-way from [Mr. Trivette's] office. Due to the pressures of other professional and personal commitments, [Mr. Trivette] is unable to travel to [SCI] to meet with [] Plaintiff at this time.").)

Again, the Court (per the undersigned Magistrate Judge) granted that motion and "extend[ed] the deadline for Plaintiff (through pro bono counsel) to file a supplemental response to [the] Motion for Summary Judgment to 03/28/2025 . . . ." (Text Order dated Mar. 20, 2025.) That Text Order cautions that "Plaintiff should not anticipate receiving any further extensions of the[] now-twice-extended deadline[ for his supplemental response] based simply on any unexplained failure of pro bono counsel to have received documents from Plaintiff." (Id.) On March 28, 2025, Mr. Trivette filed Plaintiff's Supplemental Response, stating therein that, "[a]s of [its] filing . . ., [Mr. Trivette] ha[d] not received [the] requested affidavit from Plaintiff." (Docket Entry 55 at 2; see also id. ("As late as March 14, 2025, counsel called

5

Plaintiff at [SCI].  Plaintiff said that his affidavit would be mailed immediately, but it has not arrived.").)

The Supplemental Response adds that Mr. Trivette "will submit any affidavit subsequently received from Plaintiff" (id.) and "requests that this Court accept [the C]omplaint . . . as the functional equivalent of a sworn affidavit" (id.).  Two business days later (on April 1, 2025), Mr. Trivette filed the instant Motion for Leave on Plaintiff's behalf, requesting entry of "an order allowing [Mr. Trivette] to file Plaintiff's attached affidavit late." (Docket Entry 56 at 1 (referring to Docket Entry 56-1 ("Plaintiff's Affidavit")).)[4]  The Motion for Leave relates as follows:  "Yesterday (March 31, 2025), Plaintiff's [A]ffidavit arrived.  Plaintiff signed [Plaintiff's A]ffidavit on March 26 and the envelope in which he mailed [Plaintiff's A]ffidavit shows that prison officials mailed it that same day."  (Id. (referring to Docket Entry 56-1 at 7 and Docket Entry 56-2 at 2, respectively).)  As an explanation for the tardiness of Plaintiff's Affidavit, the cover letter therein includes this statement:

> Sorry for the wait.  But I had to start over because the same day you called I went back to my block [and] I got tased and true me I didn't like it at all and it was for nothing and they through [sic] all my legal papers away.  But think [sic] god I'm okay and I'm in the hole and

---

4 Pin cites to Plaintiff's Affidavit will refer to the page numbers that appear in the footer appended to Plaintiff's Affidavit upon its docketing in the CM/ECF system.  Plaintiff's Affidavit consists of a single-page, cover letter (see Docket Entry 56-1 at 1), followed by six pages of averments (see id. at 2-7).

6

looking forward to your call soons [sic] you get this
letter.

(Docket Entry 56-1 at 1 (stray apostrophe omitted).)

Defendants have opposed the instant Motion for Leave (see Docket Entry 57 ("Opposition")) and have filed the instant Extension Motion, requesting "an extension of time in the amount of seven (7) days, after the Court enters a ruling as to the . . . Motion [for] Leave . . ., [for Defendants] to file a [s]upplemental [r]eply in support of their Motion for Summary Judgment" (Docket Entry 58 at 1 (italics and internal citation omitted)).

<u>DISCUSSION</u>

The Complaint first alleges that, on September 2, 2022, Defendant Workman – without adequate justification and after directing racially-based comments towards Plaintiff – (A) discharged (and/or attempted to discharge) a pepper-ball gun at Plaintiff while he showered, (B) then forced Plaintiff to come out of the shower in the nude in front of her, and (C) thereafter pepper-sprayed Plaintiff with a different device and (along with Defendant Danley) made Plaintiff return to his cell without allowing him to wash off the pepper spray. (See Docket Entry 1 at 4-6.) Next, the Complaint alleges that, on December 10, 2022, Defendants subjected him to the following:

1) Defendants Workman and Hoover came to Plaintiff's cell with "two write ups" (id. at 7), Defendant Hoover ordered him to "turn around and cuff up, so [they] c[ould] come in [his] cell and take

7

[his] towel, soap and deodorant and books and paper" (id.), and "[Defendant] Hoover open[ed his cell-door] trap and said hurry up before [she] spray[ed him]" (id.);

2) "scared of being sprayed, [Plaintiff] . . . grabbed [his] mat and covered [his cell-door] trap so [Defendant Hoover] couldn't spray [him] for nothing" (id.);

3) Defendant Danley subsequently arrived "holding a big can of pepper spray" (id. at 8), declined Plaintiff's request to talk (see id.), and instead immediately began "spray[ing] the fallger [sic] pepper spray through [his] door crack on the side" (id.);

4) when Defendant Hoover relayed to Defendant Danley that Plaintiff said he would "cuff up after [Defendant Danley] sprayed that pepper spray in [Plaintiff's] room" (id.) and he "cant [sic] breath [sic]" (id.), "[Defendant] Danley replied back, [']Let him stay in there, [h]is black ass should've been cuffed up[']" (id.);

5) "[Defendant] Hoover asked [Defendant] Danley[ if] he wanted them to stay there with [Plaintiff], since [he] couldn't breath [sic] and [Defendant] Danley was like [']no yall can come on[']" (id.), whereupon "[Defendants] Hoover and [] Workman walked away" (id.; see also id. (alleging that, when Defendants Workman and Hoover returned "15 minutes to 20 minutes later," pepper-spray fog remained so strong that Defendants Workman and Hoover wore "gas masks" (stray apostrophes omitted)));

6) following another stand-off, Defendant Danley threatened "to spray the pepper spray in [Plaintiff's] room again" (id. at 9) and he submitted to full restraints (see id.);

7) while "walking to the door to leave the block[, Defendant] Hoover ram[med Plaintiff's] chest into the wall which made [his] face hit the wall hard" (id.);

8) Defendant Danley then "hit [Plaintiff] in the right side of [his] ribs and got in [his] ear and said [']you must don't [sic] know who you [sic] playing with Nigger[']" (id.);

9) Defendants Danley and Hoover thereafter placed Plaintiff in a "restraint chair" (id.) and, after he "threaten[ed] to spit in [their] face[s] for doing [him] like they did" (id.), "they got a spit mask too [sic] put over [his] head" (id.);

10) Defendants Danley, Workman, and Hoover left Plaintiff in the freezing, cool-down room for two hours in just a t-shirt and boxers (see id. at 10);

11) Defendants Workman and Hoover thereafter took Plaintiff back to his cell block "in full restraints, cuffed behind [his] back, [with the] spit mask on [his] whole head" (id.) and, after Plaintiff made vulgar comments about Defendant Hoover to other inmates while en route and complained to her that his "cuffs [were] cutting [his] ankles" (id. (stray apostrophe omitted)), "she put her right leg in front of [his] left leg and slammed [him to the floor] so hard [he] blacked out for a few seconds" (id.; see also

9

id. ("I went down head first and hit my temple so hard on the floor[ that] I blacked out."));

12) at Defendant Hoover's direction, Plaintiff then was returned to the restraint chair in the cool-down room for two more hours (see id. at 11), after which Defendants Danley and Hoover "took [him] to booking and put [him] on suicide watch[, despite the fact that he] never said [he] was gonna kill [him]self" (id.); and

13) upon placing Plaintiff in a suicide room, Defendant Hoover told him "to lay on [his] stomach" (id.), after which she "cut [his] boxers off [and] then cut [his] t-shirt off" (id. (stray apostrophe omitted)), over his protest that, as a female, she was "not supposed to be cutting [his] clothes off" (id.; see also id. ("I asked [Defendant] Danley why is a female officer cutting off a male['s] clothes, . . . [with] three male officer[s] right [t]here, [but] he didn't respon[d]" (stray comma and apostrophe omitted))).

The Motion for Summary Judgment contends that the Court should enter summary judgment for Defendants on "Plaintiff's claims asserted against them in this matter on the grounds that there is no genuine issue as to any material fact and that they are each entitled to judgment as a matter of law." (Docket Entry 37 at 1.) "More specifically, [the Motion for Summary Judgment maintains that] Plaintiff was not subjected to any excessive or unlawful force, nor any other violation of his constitutional rights, such that [ D]efendants are each entitled to qualified immunity and []

10

Plaintiff's claims otherwise fail as a matter of law." (Id.) "The [M]otion for [S]ummary [J]udgment is supported by the [a]ffidavits of [Defendants] Danley[ and] Workman, [as well as four other individuals], and [a d]eclaration of [Defendant] Hoover . . . ." (Id. (referring to Docket Entries 38-1 - 38-7).)

To bolster Defendants' request for summary judgment in their favor on Plaintiff's claims from the incident on September 2, 2022, their Memorandum in Support points to evidence that "[D]efendant Workman informed Plaintiff that his allotted shower time was finished and ordered [him] to get dressed, come out from behind the shower curtain, and to 'cuff up' so that he could be . . . escorted back to his cell." (Docket Entry 38 at 5 (citing Docket Entry 38-2, ¶ 9 and Docket Entry 38-4, ¶ 9).) According to the Memorandum in Support, only after Plaintiff repeatedly refused to comply with those and similar, lawful commands (see id. at 6 (citing Docket Entry 38-2, ¶ 10 and Docket Entry 38-4, ¶ 9)), even in the face of warnings that Defendant Workman "would deploy a pepper ball gun into his shower cell/stall in an effort to obtain his compliance" (id. (citing Docket Entry 38-2, ¶ 11 and Docket Entry 38-4, ¶¶ 9, 10)), did "[Defendant] Workman attempt[] to deploy the pepper ball gun" (id.), which – due to a malfunction – resulted in "merely [a] discharge[ of] empty air" (id. (citing Docket Entry 38-2, ¶ 11)). The Memorandum in Support concludes (as to that incident) by detailing that, after Defendant Danley arrived and "correct[ed] the

11

malfunction with the pepper ball gun" (id. (citing Docket Entry 38-1, ¶ 3, Docket Entry 38-2, ¶ 13, and Docket Entry 38-4, ¶ 12)), "Plaintiff finally complied with . . . lawful orders" (id.), culminating in his return "to his cell without further incident" (id. at 7 (citing Docket Entry 38-1, ¶¶ 3-5, Docket Entry 38-2, ¶ 14, and Docket Entry 38-4, ¶ 13)), all with – contrary to the allegations in the Complaint (see Docket Entry 1 at 5-6) – "[n]o force [] utilized against [him], to include any deployment of oleoresin capsicum (whether from a pepper ball gun or a can of OC spray)" (Docket Entry 38 at 7 (citing Docket Entry 38-1, ¶¶ 6, 7, and Exh. 1, Docket Entry 38-2, ¶¶ 14-18 and Exh. 2, and Docket Entry 38-4, ¶¶ 13-15 and Exh. 1)).

As to the incident on December 10, 2022, the Memorandum in Support similarly relies on record evidence to defeat Plaintiff's claims. (See generally id. at 7-13 (citing principally Docket Entries 38-1, 38-3, and 38-4).) For example, in contrast to the Complaint's allegation that Defendant Danley refused Plaintiff's entreaty to talk and instead immediately deployed the pepper-spray fogger (see Docket Entry 1 at 8), the Memorandum in Support cites evidence that Defendant Danley first made multiple, verbal attempts to gain compliance, to which Plaintiff responded with open defiance, including by challenging Defendant Danley to "'spray, do what you do'" (Docket Entry 38 at 8 (citing and/or quoting, inter alia, Docket Entry 38-1, ¶ 10, Docket Entry 38-3, ¶ 5, and Docket

12

Entry 38-4, ¶ 18)).  Likewise, in contradiction of the Complaint's allegations that (with Plaintiff fully restrained) Defendant Hoover slammed him into a wall (see Docket Entry 1 at 9), Defendant Danley punched him in the ribs (see id.), and Defendant Hoover kicked his legs out from under him with such force that his head smashed into the floor knocking him unconscious (see id. at 10), Defendants' Memorandum in Support directs the Court to evidence that "Plaintiff was not hit, struck, or kicked in any manner by anyone" (Docket Entry 38 at 12 (citing Docket Entry 38-1, ¶ 24, Docket Entry 38-3, ¶ 23, Docket Entry 38-5, ¶ 10, and Docket Entry 38-6, ¶ 9)).

In compliance with the Federal Rules of Civil Procedure, Defendants thus have "assert[ed] that [specific] fact[s] cannot be . . . disputed [and have] support[ed] th[at] assertion by . . . citing to particular parts of materials in the record, including . . . affidavits or declarations . . . ."  Fed. R. Civ. P. 56(c)(1).  To counter Defendants' showing on that front, i.e., to "assert[] that [those] fact[s are] . . . genuinely disputed," id., Plaintiff "must support [his] assertion[s] by:  (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited [by Defendants] do not establish the absence . . . of a genuine dispute, or that [Defendants] cannot produce admissible evidence to support the[ir account of the] fact[s]," id.  In other words, under these circumstances, "non-moving parties who would bear the burden of proof on an issue at

13

trial (like [Plaintiff]) may not simply rest on assertions in their complaint but must produce <u>evidence</u> that could – if believed – permit a reasonable factfinder to rule in their favor." <u>Alexander v. Connor</u>, 105 F.4th 174, 178 (4th Cir. 2024) (emphasis added).[5]

"[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991) (emphasis omitted). But Plaintiff did <u>not</u> verify the Complaint. (<u>See</u> Docket Entry 1 at 1-11 (containing no signature, let alone any verification under oath or penalty of perjury); Docket Entry 3 at 11 (bearing Plaintiff's signature without verification under oath or penalty of perjury).)[6]

_____

        5 Consistent with that view, this Court's Local Rules directed Plaintiff to include "[i]n a responsive brief . . . the specific, <u>authenticated facts existing in the record or set forth in accompanying affidavits</u> that would be sufficient to support a jury finding of the existence of the disputed elements [of his claims]." M.D.N.C. LR 56.1(e) (emphasis added); <u>see also</u> M.D.N.C. LR 7.2(a) (identifying "statement of the facts" with "[e]ach statement of fact . . . supported by reference to a part of the official record" as item "[r]esponse briefs . . . shall contain"); M.D.N.C. LR 7.3(f) ("If supporting documents are not then available, the respondent may move for an extension of time . . . .").

        6 Plaintiff did incorporate into his Pro Se Response a single-page document labeled "Affidavit." (Docket Entry 46 at 9 (all-caps font omitted).)  However, although that document recites that Plaintiff had "be[en] duly sworn" (<u>id.</u>), the section for administration of the oath lacks any notarization (<u>see id.</u>; <u>see also id.</u> at 8 ("Certificate of Acknowledgement [sic]" confirming via notary Plaintiff's identity as person who signed Pro Se Response, but offering no representation about oath administration (bold font omitted))).  In any event, that document contains no factual matter; rather, it merely makes a bald assertion that
                                                        (continued...)

14

Cognizant of that fact (and as detailed in the Introduction), Mr. Trivette (A) diligently attempted to secure an affidavit from Plaintiff to oppose the Motion for Summary Judgment (see Docket Entry 54 at 3; Docket Entry 55 at 2), and (B) obtained extensions of time to include such an affidavit with the supplemental response authorized by the Court (see Text Order dated Jan. 27, 2025; Text Order dated Mar. 20, 2025). Yet, when the twice-extended deadline for the filing of that supplemental response arrived, Mr. Trivette "ha[d] not received [the] requested affidavit from Plaintiff." (Docket Entry 55 at 2.) Accordingly (and in light of the Court's admonition in granting the second extension of time that "Plaintiff should not anticipate receiving any further extensions . . . based simply on any unexplained failure of [Mr. Trivette] to have received documents from Plaintiff" (Text Order dated Mar. 20, 2025)), Mr. Trivette filed the Supplemental Response with only a promise to "submit any affidavit subsequently received from Plaintiff." (Docket Entry 55 at 2; see also id. ("request[ing] that this Court accept Plaintiff's pro se [C]omplaint . . . as the functional equivalent of a sworn affidavit").)

---

6(...continued)
"[t]here is a material disagreement . . . as to the versions of events of excessive force . . . in the Moore County Jail." (Id. at 9.) The preceding pages of the Pro Se Response also contain only conclusory comments of that sort. (See, e.g., id. at 2 (alleging without any context that "Plaintiff was beaten"), 3 (referring generically to "incident of excessive force"), 4 (adverting in undeveloped fashion to "brutal[,] willful[,] malicious[,] sadistic[,] unjustified[, and] excessive force that occurred").)

15

As concerns any such belated submission, Mr. Trivette argued that, "pursuant to Fed. R. Civ. P. 56(d)(2)[,] the Court could allow additional time so that [an] affidavit could be obtained." (Id. at 12 (spaces added).) That rule provision, however, requires "a nonmovant [to] show[] by affidavit or declaration that, for specified reasons, [the nonmovant] cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d) (emphasis added). The Supplemental Response did not show by affidavit or declaration (i.e., under oath or subject to perjury penalties) the specified reason(s) for Plaintiff's inability to provide an affidavit to Mr. Trivette; to the contrary, in the Supplemental Response, Mr. Trivette just proffered speculative theories for why, despite Plaintiff's statement to Mr. Trivette, during a telephone conference on March 14, 2025, "that [the] affidavit would be mailed immediately, [] it ha[d] not arrived" (Docket Entry 55 at 2). (See id. at 10 ("Frequently prison inmates are in a lock-down situation or are otherwise unable to utilize the mail system. In addition, at times mail simply is not delivered by the Postal Service.").)

Based on those considerations, it appears that, at the time of the Supplemental Response's filing (which should have concluded Plaintiff's submissions opposing the Motion for Summary Judgment), Plaintiff had "fail[ed] to properly support [his] assertion[s] of fact [substantiating his claims and had] fail[ed] to properly address [Defendants'] assertion[s] of fact [contradicting his

16

claims] as required by [Federal] Rule [of Civil Procedure] 56(c)," Fed. R. Civ. P. 56(e). Those twin failures by Plaintiff leave the Court these options under Federal Rule of Civil Procedure 56(e):

> (1) give [Plaintiff] an opportunity to properly support or address the fact[s];
>
> (2) consider the fact[s] undisputed for purposes of the [M]otion [for Summary Judgment];
>
> (3) grant summary judgment if the [M]otion [for Summary Judgment] and supporting materials – including the facts considered undisputed – show that [Defendants are] entitled to it; or
>
> (4) issue any other appropriate order.

Id.

The instant Motion for Leave effectively asks the Court to choose the first option by "allow[ing Plaintiff's A]ffidavit to be filed late." (Docket Entry 56 at 2.)[7] Conversely, in opposing the

---

7 The Motion for Leave does not cite any authority for its requested relief. (See Docket Entry 56 at 1-2.) However, Plaintiff's Affidavit does appear to "to properly support or address the fact[s at issue]," Fed. R. Civ. P. 56(e)(1), in that it sets out, "under penalty [of] perjury" (Docket Entry 56-1 at 7), Plaintiff's account of matters about which he would have possessed "personal knowledge," Fed. R. Civ. P. 56(c)(4), concerning "facts that would be admissible in evidence," id., and while otherwise "show[ing] that [he] is competent to testify on th[ose] matters," id. (See, e.g., Docket Entry 56-1 at 2-3 (averring, consistently with the Complaint, that (on September 2, 2022) Defendant Workman "pepper spray[ed Plaintiff] just for singing," forced him to get out of the shower naked in front of her, and then again "sprayed [him] for nothing at all," after which she and Defendant Danley prevented him from decontaminating), 4 (averring, consistently with the Complaint, that (on December 10, 2022) Defendant Danley deployed a pepper spray fogger in Plaintiff's cell without warning), 5 (averring, consistently with the Complaint, that (on December 10, 2022) Defendant Hoover "ram[med Plaintiff in]to the
(continued...)

17

Motion for Leave, Defendants would have the Court "decline to accept or otherwise consider Plaintiff's [Affidavit]" (Docket Entry 57 at 7), which, by logical extension, (A) would amount to adoption of Federal Rule of Civil Procedure 56(e)'s second option, i.e., "consider[ing] the fact[s asserted in the affidavits submitted by Defendants] undisputed for purposes of the [M]otion [for Summary Judgment]," Fed. R. Civ. P. 56(e)(2), and (B) likely would lead (as to some, if not all, of Plaintiff's claims) to the result denoted as the third option under Federal Rule of Civil Procedure 56(e), i.e., the "grant[ing of] summary judgment [for Defendants because] the [M]otion [for Summary Judgment] and supporting materials – including the facts considered undisputed – [would] show that [they are] entitled to it," Fed. R. Civ. P. 56(e)(3).

The Motion for Leave rests its plea for the Court to excuse the tardiness of Plaintiff's Affidavit on the statements in its "cover letter" (Docket Entry 56 at 1 (referring to Docket Entry 56-1 at 1)), which indicate that, immediately after Plaintiff's

---

7(...continued)
wall [while hand-cuffed and shackled, causing him to] hit [his] head and [the] right side [of his] face," after which Defendant Danley "hit [Plaintiff] in the ribs" while making a racist comment), 6-7 (averring, consistently with the Complaint, that (on December 10, 2022) Defendant Hoover, while leading Plaintiff back to his cell wearing "leg restraints, [with his] hands cuffed to [his] back, [and with a] spit mask on," put her leg in front of [his] left leg and used force [to] slam [him to the floor] on [his] head/temple so hard [he] went to sleep," and thereafter forced him to "lay on his stomach" in a suicide room while she "cut[ his] clothes off[, before she] help[ed him] stand up[, ] made [him] back up naked . . . and took [his hand] cuff[s] off").)

18

telephone call with Mr. Trivette on March 14, 2025, during which (per the Supplemental Response) "Plaintiff said that his affidavit would be mailed immediately" (Docket Entry 55 at 2), Plaintiff "got tased . . . for nothing and they [presumably, correctional officers] through [sic] all [his] legal papers away" (Docket Entry 56-1 at 1 (stray apostrophe omitted)), such that Plaintiff "had to start over" (id.). As Defendants' Opposition intimates, even if accepted at face value, that account does not explain Plaintiff's failure to provide an affidavit to Mr. Trivette within the weeks that followed their "calls . . . on February [] 14 and 26" (Docket Entry 54 at 3), when Mr. Trivette "urged Plaintiff to mail [Mr. Trivette an] affidavit" (id.), in time to comply with "the March 14, 2025 filing deadline then in effect" (Docket Entry 57 at 6). (See id. ("Even assuming arguendo that Plaintiff had[ begun work on an affidavit before March 14, 2025], it is clear that [Plaintiff] never exhibited any sense of urgency or intention to assist [Mr. Trivette] in meeting the March 14, 2025 deadline.").)[8]

---

8 Defendants also have pointed to circumstantial evidence calling into doubt "whether the purported incident Plaintiff describe[d] in his cover letter (as being the reason for his late submission) ever even occurred" (Docket Entry 57 at 6). (See id. at 6-7 ("According to the North Carolina Department of Adult Correction [('NCDAC')] Offender Public Information website, Plaintiff . . . has committed multiple infractions during this, his most recent, period of incarceration. . . . Plaintiff's most recent infractions occurred on February 21, 2025, [and] such infractions includ[ed] . . . illegal cloth/sheet/linens. There is no indication whatsoever of any incident or conduct violation having occurred since February 21, 2025, to include any incident on
(continued...)

Nonetheless, the following commentary to Federal Rule of Civil Procedure 56 strongly suggests that allowing consideration of Plaintiff's Affidavit represents the better course:

> Subdivision (e) [of Federal Rule of Civil Procedure 56] addresses questions that arise when a party fails to support an assertion of fact or fails to properly address another party's assertion of fact as required by [Federal] Rule [of Civil Procedure] 56(c). . . . Before deciding on other possible action, subdivision (e)(1) recognizes that the court may afford an opportunity to properly support or address the fact. <u>In many circumstances this opportunity will be the court's preferred first step</u>. . . . <u>The choice among possible orders should be designed to encourage proper presentation of the record</u>.

Fed. R. Civ. P. 56 advisory committee's notes, 2010 Amendment, Subdivision (e) (emphasis added)); <u>see also</u> <u>Grimes v. District of Columbia</u>, 794 F.3d 83, 92 (D.C. Cir. 2015) (identifying above-quoted commentary and "implicit preference for judgments on the merits" as guideposts for addressing situation where "[t]he record does not suggest that [the plaintiff] wishes to abandon her claims, but [the record] also appears to lack evidence needed to carry them over the summary judgment threshold"); <u>Sinclair v. Mobile 360, Inc.</u>, 417 F. App'x 235, 241 n.13 (4th Cir. 2011) (describing "2010 version of [Federal] Rule [of Civil Procedure] 56" as "helpful to" any "party [who] has failed to properly support or address an

---

8(...continued)
March 14, 2025. One would presume that[,] if the NCDAC documents infractions of a relatively minor nature such as illegal cloth/sheet/linens, it would certainly document a conduct violation sufficiently serious to warrant Plaintiff being tasered as he claims." (internal quotation marks omitted)).)

20

assertion of fact," (A) because subsection (e) "recognizes that the court may afford the party an opportunity to do so, and . . . that orders other than an award of summary judgment to the opposing party may be appropriate," and (B) because, "[s]ignificantly, the Advisory Committee recognized that 'the choice among possible orders should be designed to encourage proper presentation of the record'" (emphasis added) (internal brackets, citation, and some quotation marks omitted)); Anderson v. Bristol, Inc., 936 F. Supp. 2d 1039, 1047 (S.D. Iowa 2013) ("[W]hen determining the proper course of action following a motion to amend [an insufficiently supported summary judgment response], the [c]ourt should generally choose the option that 'encourages the proper presentation of the record.'" (internal brackets omitted) (quoting Fed. R. Civ. P. 56 advisory committee's notes, 2010 Amendments, Subdivision (e))).

Put another way, when a party neglects to properly contest the opposing party's statement of facts, "taking [such] facts as admitted – particularly dispositive facts – is not the 'preferred first step.'" Lexington Ins. Co. v. Paddock Swimming Pool Co., 532 F. Supp. 3d 1, 4 n.2 (D.D.C. 2021) (quoting Grimes, 794 F.3d at 92); accord Panarello v. Zinke, 254 F. Supp. 3d 85, 97 (D.D.C. 2017), aff'd sub nom., Panarello v. Bernhardt, 788 F. App'x 18 (D.C. Cir. 2019). And, for understandable reasons, as the alternative of "giving the party [who initially failed to properly support its own assertions of fact] an opportunity to support

21

[those assertions of] fact '"minimizes the chance of an unjust result based on an inadequate record."'" Kam-O'Donoghue v. Tully, Civ. Action No. 16-11054, 2018 WL 2739930, at *1 (D. Mass. Mar. 16, 2018) (unpublished) (quoting Parks v. Blanchette, No. 3:09CV604, 2015 WL 1970526, at *1 (D. Conn. May 1, 2015) (unpublished), in turn parenthetically quoting 11 James William Moore et al., Moore's Federal Practice § 56.99[2][a] (3d ed. 2015)); see also Huffman v. Davey Tree Expert Co., No. CV 418-184, 2024 WL 200930, at *3 (S.D. Ga. Jan. 18, 2024) (unpublished) (pointing to Advisory Committee's Note regarding 2010 Amendment to Federal Rule of Civil Procedure 56, "preference for summary judgment determinations based on the merits rather than technicalities," and "overriding goal of securing the just determination of every action and proceeding" in allowing the plaintiff additional "opportunity to address various facts presented in the partial summary judgment motions").

Still, "invoking [Federal] Rule [of Civil Procedure] 56(e)(1) is a matter of this [C]ourt's discretion." Peronis v. United States, No. 2:16CV1389, 2018 WL 4740170, at *7 (W.D. Pa. Oct. 2, 2018) (unpublished). In deciding whether to exercise that discretion to invoke subdivision (e)(1) of Federal Rule of Civil Procedure 56 (and thus to allow Plaintiff's Affidavit to support the factual assertions in the Supplemental Response to the Motion for Summary Judgment), the Court observes that "other courts have declined to afford th[e] opportunity [to belatedly support a

22

factual assertion in opposition to a summary judgment motion] in cases of bad faith or in protracted litigation where [such] further opportunity to address summary judgment arguments would lead to even further delay in the litigation process." Id. (citing cases).

Here, on the issue of further delay (and as previously documented), Plaintiff filed Plaintiff's Affidavit (along with the instant Motion for Leave) only two business days late. The "fil[ing of the M]otion [for Leave] relatively shortly after [the filing of the Supplemental R]esponse[ means that, practically speaking, the] request [for leave to file Plaintiff's Affidavit] has not interfered with the [C]ourt's decisional process regarding [D]efendants' [M]otion for [S]ummary [J]udgment," Wilson v. Deutsche Bank & Tr. Co. Ams., No. 3:18CV854, 2020 WL 4559822, at *3 (N.D. Tex. Apr. 28, 2020) (unpublished), which weighs in favor of "the [C]ourt grant[ing the M]otion [for Leave] and includ[ing Plaintiff's Affidavit] attached to the[ M]otion [for Leave] as part of [his Supplemental R]esponse," id.; see also id. (assuming that motion to supplement summary judgment response was "procedurally defective," but "nevertheless grant[ing that] motion under [Federal] Rule [of Civil Procedure] 56(e)," and quoting as support "[Federal] Rule [of Civil Procedure] 56 advisory committee's note to 2010 amendment"); Peronis, 2018 WL 4740170, at *9 (citing fact that court saw "no reason why [untimely] filing would have any impact on efficiency in th[e] case" in accepting said filing).

23

Regarding bad faith, Plaintiff's Affidavit "is not a wholesale change in position. To the contrary, [P]laintiff[] ha[s] maintained the[ same] overall theory since the initial filing of the [C]omplaint." Peronis, 2018 WL 4740170, at *9. "The fact that [P]laintiff[] . . . [sh]ould have been more [timely] with respect to [filing Plaintiff's Affidavit] does not change [his] theory of the case. Put simply, [Defendants] ha[ve] been on notice of [Plaintiff's] claims since the beginning." Id. Moreover, the Court's prior orders (discussed in the Introduction) already contemplated that Defendants would receive an opportunity "to file a[ supplemental] reply [which will allow them to] address[] the new evidence." Wilson, 2020 WL 4559822, at *3. Given those circumstances and the absence (at least at this point) of any other basis to "satisf[y the Court] that [Plaintiff's A]ffidavit . . . [wa]s submitted in bad faith or solely for delay," Fed. R. Civ. P. 56(h), "[t]here is no justification to find bad faith," Peronis, 2018 WL 4740170, at *9, and therefore no reason to "decline[] to afford [Plaintiff] this opportunity [to properly support the factual assertions in the Supplemental Response]," id. at *7.[9]

In sum, based on the foregoing analysis (and like other courts confronted with similar scenarios):

---

9 "If [the Court later becomes] satisfied that [Plaintiff's Affidavit] . . . [wa]s submitted in bad faith or solely for delay," Fed. R. Civ. P. 56(h), Plaintiff "may [then] be held in contempt or subjected to other appropriate sanctions," id.

> [T]he [C]ourt finds in its discretion that permitting
> [consideration of Plaintiff's Affidavit] is warranted.
> . . . [T]he purpose of summary judgment is to truly
> assess whether there is a genuine need for trial. And,
> under [Federal] Rule [of Civil Procedure] 56(e), it is
> ordinarily the preferred first step to allow a party [who
> has failed to properly support or address the facts at
> issue an opportunity] to properly support or address the
> fact[s] at issue.

Id.; see also Anderson, 936 F. Supp. 2d at 1047 ("find[ing the

p]laintiff's reasons for not complying with [requirement to support

her factual assertions with record evidence] in the first instance

uncompelling," but, in interest of obtaining "most complete record

possible," opting to "consider [the p]laintiff's amended filings in

ruling on [the d]efendants' [summary judgment] motions").[10]

_____

10 Defendants have acknowledged that "[w]hether or not to
accept Plaintiff's [Affidavit] . . . is within the sound discretion
of this [] Court" (Docket Entry 57 at 5), albeit based on authority
predating the adoption (in 2010) of the current version of Federal
Rule of Civil Procedure 56(e) on which the Court has relied (see
id. (quoting Lovelace v. Lee, 472 F.3d 174, 204 (4th Cir. 2006),
for proposition that "'[a] district court has discretion to accept
an untimely affidavit'"). In that case, the United States Court of
Appeals for the Fourth Circuit cited Federal Rule of Civil
Procedure 6(b) and (d) as support for the statement quoted by
Defendants. See Lovelace, 472 F.3d at 204. Then (as now),
"[u]nder Federal Rule of Civil Procedure 6(b)[,] when an act . . .
[wa]s to be done at or within a certain time, the court [could], in
its discretion, 'upon motion made after the expiration of the
specified period permit the act to be done where the failure to act
was the result of excusable neglect.'" Nath v. Belzberg, Civ. No.
06-3454, 2007 WL 9643367, at *4 (D. Md. July 13, 2007)
(unpublished) (emphasis added) (quoting Fed. R. Civ. P. 6(b)
(2005)); see also Fed. R. Civ. P. 6(b)(1)(B) (2023) (requiring
showing of "excusable neglect" for extensions sought "after the
time has expired"). Coordinately, at the time of the decision in
Lovelace, under Federal Rule of Civil Procedure 6(d), "'opposing
affidavits [could] be served not later than 1 day before [a motion]
hearing, unless the court permit[ted] them to be served at some
(continued...)

Having exercised its discretion to grant the Motion for Leave and to permit consideration of Plaintiffs' Affidavit in conjunction with Defendants' Motion for Summary Judgment, the Court agrees with Defendants that, pursuant to Federal Rule of Civil Procedure 6(b)(1)(A), good cause exists to "grant[ their timely-filed

---

10(...continued)
other time." <u>Hickenbottom v. Nassan</u>, Civ. No. 03-223, 2007 WL 7753803, at *9 n.13 (W.D. Pa. Mar. 29, 2007) (unpublished) (emphasis omitted) (quoting Fed. R. Civ. P. 6(d) (2005)). A revised version of that provision remains in effect. <u>See</u> Fed. R. Civ. P. 6(c)(2) (generally providing that "opposing affidavit[s] must be served at least 7 days before the hearing, unless the court permits service at another time"). Plaintiff has not requested a hearing on the Motion for Summary Judgment (even after an invitation to do so (<u>see</u> Text Order dated Jan. 27, 2025)) (<u>see</u> Docket Entries 46, 55, 56) and thus the "Motion[ for Summary Judgment likely] shall be considered and decided . . . without [a] hearing," M.D.N.C. LR 7.3(c)(1). As such, the "provision that opposing affidavits may be served not later than [7] day[s] before the hearing [likely] becomes meaningless," <u>AT&T Corp. v. Overdrive, Inc.</u>, No. 1:05CV1904, 2007 WL 315709, at *3 (N.D. Ohio Jan. 30, 2007) (unpublished) (internal quotation marks omitted), and "the latest deadline for submission of documents in . . . opposition to [the Motion for S]ummary [J]udgment [ wa]s the date provided in this Court's last order granting an extension of time," <u>Jones v. Fulton Cnty.</u>, No. 1:06CV2125, 2008 WL 11334167, at *4 n.5 (N.D. Ga. Sept. 2, 2008) (unpublished), <u>aff'd</u>, 2008 WL 11340310 (N.D. Ga. Sept. 30, 2008) (unpublished). That leaves only the possible applicability of Federal Rule of Civil Procedure 6(b)(1)(B), but – even "[i]f the [ C]ourt properly [could have] denied [Plaintiff's] request [to file Plaintiff's Affidavit out of] time under [that provision], that would [still] present the question [of] whether the [C]ourt should . . . 'consider[ Defendants'] statement of facts as undisputed for purposes of the [M]otion for [S]ummary [J]udgment.'" <u>Warkentin v. Federated Life Ins. Co.</u>, 594 F. App'x 900, 902 (9th Cir. 2014) (internal brackets omitted) (quoting Fed. R. Civ. P. 56(e)(2)). As a result, the Court has proceeded directly to deciding whether to "exercise its discretion . . . to deem [Defendants'] averments about the[] facts as admitted or instead . . . allow[] the entry of [Plaintiff's] late-submitted factual material while providing [Defendants more] time to [file their supplemental reply.]" <u>Id.</u> at 903.

Extension Motion, requesting] an extension of time in the amount of seven (7) days after the Court enters [its] ruling as to the . . . Motion [for] Leave . . . in which to file [their s]upplemental [r]eply in support of their Motion for Summary Judgment." (Docket Entry 58 at 5 (italics omitted).)

<u>CONCLUSION</u>

The Court will treat Plaintiff's Affidavit as timely, for the purpose of "giv[ing Plaintiff] an opportunity to properly support or address the fact[s at issue in the Motion for Summary Judgment]," Fed. R. Civ. P. 56(e)(1), and will allow Defendants additional time to file their supplemental reply, so that they can present argument as to why "Plaintiff's [factual] contentions in [Plaintiff's Affidavit] nevertheless do not defeat their [M]otion for [S]ummary [J]udgment" (Docket Entry 58 at 4).  Moving forward, "[t]he parties [and other litigants] should not view this exercise of discretion as permission to disregard the deadlines ordered by this [C]ourt."  <u>Hickenbottom v. Nassan</u>, Civ. No. 03-223, 2007 WL 7753803, at *10 (W.D. Pa. Mar. 29, 2007) (unpublished).

**IT IS THEREFORE ORDERED** that the instant Motion for Leave (Docket Entry 56) is **GRANTED**, in that the Court accepts Plaintiff's Affidavit (Docket Entry 56-1) as timely filed.

**IT IS FURTHER ORDERED** that the instant Extension Motion (Docket Entry 58) is **GRANTED,** in that Defendants shall file any supplemental reply by April 21, 2025.

_/s/ L. Patrick Auld_
**L. Patrick Auld**
**United States Magistrate Judge**

April 14, 2025