IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DARREN S. BELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-CV-169 |
| | ) | |
| RONNIE FIELDS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles Chief District Judge.

In this § 1983 action, the plaintiff, Darren Belton, brings a series of claims against officials at the Moore County Detention Center based on incidents that occurred in September 2022 and December 2022 while he was a pretrial detainee. The remaining defendants, Sergeant Seth Danley, Officer Jacqueline Workman, and Corporal Haley Hoover, have moved for summary judgment. The Magistrate Judge recommended that the motion be granted in part and denied in part, and the defendants objected to the extent the Magistrate Judge recommended summary judgment be denied.

The Magistrate Judge carefully and thoroughly detailed the parties' evidence and arguments in his recommendation. The Court agrees with the Magistrate Judge to the extent he recommended summary judgment in favor of the defendants. No party objected to these aspects of the recommendation. As to the defendants' objections, the Court will sustain those objections in part and dismiss Mr. Belton's claims to the extent he contends his constitutional rights were violated by the attempted use of a pepper gun, by placing

him in a restraint chair, or by moving him to a cool-down room and then a safety observation cell, as set forth in more detail herein. Otherwise, the Court agrees with the Magistrate Judge.

## I. Undisputed Background Facts

There are many disputed facts. But the general outline of events at issue is not disputed.

In 2022, Mr. Belton was awaiting trial and was in custody at the Moore County Detention Center. He was housed in "Green Block," the cell block where the most dangerous detainees were held. Doc. 38-2 ¶ 4; Doc. 38-4 ¶ 4. He had a lengthy history of assaulting detention staff, of which at least Sergeant Danley was aware. Doc. 38-1 ¶ 20.

On September 2, 2022, Mr. Belton was in the shower area taking a shower. The process for overseeing showers by detainees from Green Block is labor-intensive and highly orchestrated in order to accomplish showers efficiently with appropriate safeguards for detainee and officer safety. Doc. 61 at 40–41. Officer Workman instructed him to come out of the shower and then at some point attempted unsuccessfully to deploy a pepper gun. What happened next is disputed, but eventually, and without allowing him to decontaminate, Sergeant Danley and Officer Workman returned Mr. Belton to his cell.

On December 10, 2022, Sergeant Danley and Officer Workman came to Mr. Belton's cell. Mr. Belton refused to follow orders to "cuff up" so Sergeant Danley and Officer Workman could come into his cell, and he threatened the officers. Eventually,

Sergeant Danley deployed a pepper spray device in Mr. Belton's cell. Mr. Belton remained belligerent.

Sergeant Danley and Officer Workman left, returning later to remove Mr. Belton from his cell. It is undisputed that Sergeant Danley and Officer Workman used some force in this endeavor, though the degree and circumstances of that force are disputed. Ultimately, they took Mr. Belton to a "cool-down" room and left him there.

After a time, Corporal Hoover and Officer Workman came to the cool-down room to escort Mr. Belton back to his cell. Mr. Belton "continued to talk shit to them," all the way to the cell block. *Id*. at 68 (cleaned up). At some point, Mr. Belton ended up on the ground, after which Corporal Hoover and Sergeant Danley took Mr. Belton back to the cool-down room and then later confined him in a safety control room.

More detail will be provided in the course of discussing specific claims. Each of Mr. Belton's claims will be discussed in turn. Going forward, the Court recites the evidence in the light most favorable to Mr. Belton. This includes reciting the defendants' evidence that Mr. Belton has not disputed.

## II. September 2, 2022, Claims

### A. Excessive Force Claims Against Officer Workman (Shower)

Mr. Belton asserts that Officer Workman's attempted use of a pepper gun while Mr. Belton was in the shower constitutes excessive force in violation of his due process rights. *Id*. at 24–27. He also asserts that Officer Workman thereafter used pepper spray on him while he was in the shower, and that this also constitutes excessive force in violation of his due process rights.

3

Mr. Belton acknowledges that the pepper gun misfired several times, projecting only dust. He offers no evidence that the dust had any effect on him or that it harmed him in any way. To the extent his claim is based on the vague assertion of some "dust" coming out during one of the misfires, this is insufficient to show excessive force amounting to punishment under the due process clause. The defendants' motion for summary judgment will be granted as to this claim regarding the use of the pepper gun.

Mr. Belton's evidence is that after the pepper gun misfired, he did not get out of the shower and instead asked Officer Workman to allow him more time in the shower. Officer Workman then used another device to successfully pepper spray Mr. Belton.

Detention officers are not required to convince a prisoner that their commands are reasonable before the prisoner must obey. The evidence is undisputed that the jail had a significant interest in maintaining control over the timing of inmate showers for inmates in Green Block. The defendants' evidence is that Mr. Belton refused to comply with the directive to leave the shower and instead argued with Officer Workman.

But Mr. Belton's evidence is that the attempted use of the pepper gun occurred before he had time to comply with Officer Workman's demand to leave the shower, that the successful use of the pepper spray was very soon thereafter, and that Officer Workman accompanied her demands with name-calling and a lack of privacy. Given Mr. Belton's testimony, Doc. 56-1 at 2, and as explained by the Magistrate Judge, Doc. 61 at 24–27, a reasonable fact-finder could conclude that Officer Workman used excessive force. The defendants' motion for summary judgment will be denied as to this claim regarding the pepper spray.

### B. Privacy Violation Claim Against Officer Workman (Shower)

The Magistrate Judge clearly explained why Mr. Belton is entitled to a trial on this claim. *See id*. at 28–31. The Court agrees. Nothing in the defendants' objections undermines the Magistrate Judge's analysis, and Officer Workman's arguments are more appropriately addressed to a jury. The defendants' motion for summary judgment will be denied as to this claim.

### C. Deliberate Indifference Claim

After being sprayed, Mr. Belton left the shower and Sergeant Danley and Officer Workman took him back to his cell without allowing him to decontaminate from the pepper spray. The Magistrate Judge explained why Mr. Belton is not entitled to a trial on this claim. *Id*. at 32–42. Mr. Belton did not object. The Court agrees with the Magistrate Judge. The defendants' motion for summary judgment will be granted as to this claim.

## III. December 10–11, 2022, Claims

As noted *supra*, on December 10, 2022, Corporal Hoover and Sergeant Danley came to Mr. Belton's cell. They instructed him to cooperate in the handcuffing process.

### A. Pepper Spray Claim

Mr. Belton alleged and testified that when Corporal Hoover and Sergeant Danley came to his cell, they pepper sprayed him for no reason. The defendants' testimony and video evidence, however, show that Mr. Belton was uncooperative, belligerent, and threatening; that he was given many opportunities to comply but he did not; and that he was warned that pepper spray would be used if he did not comply. As the Magistrate Judge noted, no reasonable jury would believe Mr. Belton's version in the face of the

5

video. Doc. 61 at 48 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). As the Magistrate Judge concluded, the use of pepper spray in an effort to obtain compliance with appropriate directions was not a constitutional violation. The Magistrate Judge recommended summary judgment be granted as to this claim. *See id* at 43–54. Mr. Belton did not object, and the Court agrees with the Magistrate Judge. The defendants' motion for summary judgment will be granted as to this claim.

### B. Improper Punishment – Confinement After Pepper Spray

The evidence is undisputed that after Mr. Belton was pepper-sprayed, Corporal Hoover and Sergeant Danley left him in his cell and did not take him elsewhere to be decontaminated. The video evidence shows that after being pepper-sprayed Mr. Belton remained combative and again refused to cooperate in being handcuffed. *Id*. at 55. The Magistrate Judge clearly explained why Mr. Belton is not entitled to a trial on his claim that this violated his constitutional rights. *Id*. at 54–58. Mr. Belton did not object to this recommendation. The Court agrees with the Magistrate Judge. The defendants' motion for summary judgment will be granted as to this claim.

### C. First Excessive Force Claim Against Corporal Hoover and Sergeant Danley

When Mr. Belton remained uncooperative even after use of pepper spray, the officers left for a time. Corporal Hoover and Sergeant Danley later returned, and this time Mr. Belton cooperated to the extent that the officers were able to place him in handcuffs and ankle restraints. The Magistrate Judge carefully reviewed the conflicts in the evidence over whether Mr. Belton was cooperative as they left the cell or whether he

6

remained combative and over whether Corporal Hoover and Sergeant Danley used any force against Mr. Belton after they removed him from his cell, and the Magistrate Judge recommended that summary judgment be denied on this claim. *Id*. at 59–64.

The defendants objected "to the portions of the Recommendation which recommend that they be denied summary judgment," Doc. 64 at 1, but they made no specific argument directed to this aspect of the Magistrate Judge's recommendation. The court agrees with the Magistrate Judge. The defendants' motion for summary judgment will be denied as to this claim.

### D. Improper Punishment Claims Against Corporal Hoover and Sergeant Danley for Placement in Restraint Device and Cool-Down Room

Corporal Hoover and Sergeant Danley then placed Mr. Belton in a restraint chair, also called a WRAP restraint device, and rolled the chair to another room that Mr. Belton calls a "cool-down room." The Court will use that term for convenience. The defendants' evidence establishes that Mr. Belton continued to make threatening and obscene comments during this process, Doc. 38-1 at ¶ 15; Doc. 38-3 at ¶ 11; Doc. 38-4 at ¶ 23–24, which Mr. Belton does not deny. Corporal Hoover and Sergeant Danley left Mr. Belton in the room, which was excessively cold, for a period of time, which Mr. Belton says was two hours.[1]

The Magistrate Judge did not identify any constitutional issues with placing Mr. Belton in the WRAP device. To the extent the complaint asserts a claim for that action, it

---

[1] There is no constitutional violation associated with using the restraint chair under these circumstances, and Mr. Belton has not contended otherwise.

will be dismissed. The undisputed evidence is that Mr. Belton was resisting and cursing Corporal Hoover and Sergeant Danley and this restraint was reasonable and not punitive.

The Magistrate Judge recommended denying summary judgment on Mr. Belton's improper punishment claim to the extent it was based on being placed in the cool-down room. Doc. 61 at 64–68. The defendants object, contending that no reasonable juror could find in favor of Mr. Belton. But as the Magistrate Judge explained, a rational factfinder could find an intent to punish if they accept Mr. Belton's testimony that Corporal Hoover and Sergeant Danley assaulted him before putting him in the restraint chair, cussed at him, and used racist language, and that the room was so cold that his legs went numb. Doc. 56-1 at 5–6. The defendants dispute this evidence and have offered non-punitive reasons for their actions, but that simply creates disputed questions of material fact.

The defendants' objections do not undermine the Magistrate Judge's analysis. Mr. Belton is entitled to a trial on this claim, and the defendants' motion for summary judgment will be denied as to this claim.

### E. Second Excessive Force Claim Against Corporal Hoover and Officer Workman

Corporal Hoover and Officer Workman removed Mr. Belton from the cool-down room. Leaving him in full restraints, they walked him back to the cell block. Mr. Belton continued to insult and curse at officers. The defendants' evidence shows that Mr. Belton continued to threaten the officers and that he was physically resistant, and Mr. Belton offered no evidence to the contrary. But as the Magistrate Judge pointed out, there are

material conflicts in the evidence. Mr. Belton says that Corporal Hoover violently tripped him, catapulting him to the floor and causing him to hit his head. The defendants' evidence shows that when Mr. Belton continued to physically resist, they used a controlled maneuver to get him to the floor without any significant force.

The defendants objected "to the portions of the *Recommendation* which recommend that they be denied summary judgment," Doc. 64 at 1, but they made no specific argument directed to this aspect of the Magistrate Judge's recommendation. The court agrees with the Magistrate Judge, *see* Doc. 61 at 68–73, and the defendants' motion for summary judgment will be denied as to this claim.

### F. December 10–11, 2022, Improper Punishment Claims Against Corporal Hoover and Sergeant Danley for Placement in Cool-Down Room Again and then in Suicide-Risk Room

After Mr. Belton continued to physically resist the officers, Corporal Hoover and Sergeant Danley put him back in the restraint chair in the face of his ongoing resistance. Corporal Hoover then returned him to the cool-down room and left him. About two hours later, Corporal Hoover and Officer Workman removed him from the restraint chair, but Mr. Belton remained aggressive and noncompliant. They then took him to a safety observation cell, which Mr. Belton calls a "suicide risk room," so that he would not continue to disturb and incite other inmates and where he could be regularly observed. There, Corporal Hoover cut off his clothes around the various restraints, leaving him naked for a time until he was given a "safety smock."

Mr. Belton contends that this second round in the cool-down room and the later transfer to what he characterizes as "suicide watch" constituted unconstitutional

9

punishment.[2] The Magistrate Judge recommended denying the defendants' summary judgment motion on this point, identifying several disputed questions of fact. Doc. 61 at 73–78. The Court appreciates those disputes but finds they are not material in light of the undisputed evidence and the entire course of events. Even if they are material, the defendants are entitled to qualified immunity on this claim.

In order to violate the Fourteenth Amendment, the plaintiff must show that these actions were "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective." *Williamson v. Stirling*, 912 F.3d 154, 178 (4th Cir. 2018). Here, there is clear and undisputed evidence that the reasons for placing Mr. Belton in the cool-down room the second time and then in a safety-observation cell were not punitive.

Mr. Belton was housed in the Green Block, the jail's high security unit with many restrictions. Doc. 38-2 at ¶ 4; Doc. 38-3 at ¶ 3; Doc. 56-1 at 4. He was known to Sergeant Danley to have a history of assaulting officers and of being disruptive in the cell block. Consistent with this history, on December 10, Mr. Belton was uncooperative, obstreperous, and disobeyed repeated commands. *See, e.g.*, Doc. 61 at 49. He actively blocked access to his cell and threatened to fight the officers. *Id.* at 53. After he allowed himself to be restrained, he continued to insult, resist, and harass the detention officers, often physically resisting them. This continued over the course of the next several hours, even after he had time to calm down in the "cool down room."

---

[2] There is no constitutional violation associated with using the restraint chair under these circumstances, and Mr. Belton has not contended otherwise.

When, at this point, Mr. Belton again physically resisted and threatened the officers, it was not an unconstitutional punishment to place him back in the cool-down room. The reasons not to return him to the cell block were obvious, and Mr. Belton does not testify that the cool-down room remained at an unreasonably cold temperature during this time. Nor does he allege that the defendants continued their racist or abusive language.

Similarly, it was not an unconstitutional punishment to then move Mr. Belton to a security cell after the time in the cool-down room proved ineffective and he remained agitated, belligerent, and threatening. The defendants, at least one of whom knew of Mr. Belton's history of assaulting detention officers, testified that they placed Mr. Belton in the safety observation room as an alternative to taking him back to the Green Block, where they believed he would create a disturbance and wake up the other inmates in that unit. Doc. 38-3 at ¶ 18. There is no evidence that this belief was unreasonable or that the cell had different conditions than the Green Block cell except that Mr. Belton was stripped so he could wear a suicide smock and that he was monitored more frequently. *Id*. at ¶ 19; Doc. 56-1 at 6–7. To the extent Mr. Belton points to the forced removal of his clothes here as punishment, there is no evidence it was imposed as punishment. The undisputed evidence is that the safety smock is required in these safety cells. Doc. 38-1 at ¶ 21; Doc. 38-3 at ¶ 19.

The Magistrate Judge suggested that a jury could find that returning Mr. Belton to the cool-down room for a second stint and then moving him to a security cell where he was required to wear a safety smock were excessive in relation to their asserted non-

punitive purpose. Doc. 61 at 78. Even assuming that is so, the defendants are entitled to qualified immunity on this claim.

"[Q]ualified immunity protects a government official from civil liability and suit 'insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williamson*, 912 F.3d at 186 *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A reasonable person in the defendants' position could easily have failed to appreciate that their conduct would violate Mr. Belton's rights. *See Williamson*, 912 F.3d at 186. Whatever the defendants' internal motivations, there is no evidence of other less punitive options available to the defendants to manage a disruptive, belligerent, and aggressive detainee that would address the legitimate security and safety issues posed by Mr. Belton. Under these facts, it was not clearly established that these forms of managing Mr. Belton's custody violated his constitutional rights. *See Williamson*, 912 F.3d at 186. The defendants' motion for summary judgment will be granted as to this claim.

### G. December 10–11, 2022, Privacy Violation Claim Against Corporal Hoover and Sergeant Danley (Suicide-Risk Room)

The Magistrate Judge recommended denying summary judgment on Mr. Belton's privacy violation claim associated with Corporal Hoover cutting off his clothes in the suicide-risk cell. The evidence is undisputed that it is the practice to place inmates in those cells in these smocks for their safety and that Corporal Hoover was trained to remove Mr. Belton's clothing. Mr. Belton could not be allowed the opportunity to undress himself, because he was continuing to resist and threaten officers. Even if a

12

reasonable jury could conclude that the use of the smock was excessive under the circumstances, the defendants are entitled to qualified immunity, because the constitutional right at issue was not "clearly established at the time of the challenged conduct." *See id*. The defendants' motion for summary judgment will be granted as to this claim.

## IV. Going Forward

The Court's trial docket is full for the remainder of 2025. The Clerk shall set the case for trial during the March 2026 civil term of court. The case can be called for trial to begin at any time between March 2 and March 30, 2026.

It is **ORDERED AND ADJUDGED** that the defendants' motion for summary judgment, Doc. 37, is **GRANTED in part** and **DENIED in part** as follows:

1. The motion is **DENIED** in part and the following claims will proceed to trial:

   a. Mr. Belton's due process claim against Officer Workman that successful use of a pepper-spray device in the shower area on September 2, 2022, constituted excessive force that amounts to punishment;

   b. Mr. Belton's due process claim against Officer Workman based on the involuntary and forced exposure of his genitals to a member of the opposite sex in the shower area on September 2, 2022;

   c. Mr. Belton's due process claim against Corporal Hoover and Sergeant Danley based on alleged use of excessive force amounting to punishment during the first trip out of the cell block on December 10–11, 2022;

13

d. Mr. Belton's due process claim against Corporal Hoover and Sergeant Danley based on alleged punishment by placing him in in the excessively cold cool-down room for two hours on December 10–11; and

e. Mr. Belton's excessive force claim against Corporal Hoover and Sergeant Danley during the aborted attempt to return him to the cell block on December 10–11, 2022.

2. The motion is **GRANTED** in part and **all** other claims, including but not limited to the following claims, are **DISMISSED**:

    a. Mr. Belton's excessive force claim against Officer Workman based on the attempted use of a pepper gun on September 2, 2022;

    b. Mr. Belton's deliberate indifference claim against Sergeant Danley and Officer Workman based on denial of pepper spray decontamination in the shower area on September 2, 2022;

    c. Mr. Belton's excessive force claim against Sergeant Danley for deploying pepper spray into his cell on December 10, 2022;

    d. Mr. Belton's deliberate indifference claim against Sergeant Danley and Corporal Hoover based on confining him to his cell after Sergeant Danley pepper-sprayed into his cell on December 10, 2022;

    e. Mr. Belton's improper punishment claim based on placing him in a WRAP device on December 10–11, 2022; and

    f. Mr. Belton's improper punishment claims and privacy claim based on placing him in the WRAP device and cool-down room a second time and then in a safety cell on December 10–11, 2022.

3. The Clerk **SHALL** set the case for trial during the March 2026 civil term of court.

This the 18th day of September, 2025.

_____
UNITED STATES DISTRICT JUDGE

15

Case 1:23-cv-00169-CCE-LPA    Document 65    Filed 09/18/25    Page 15 of 15